IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAGOBERTO VEGA, | ) | |
| | ) | |
| Petitioner, | ) | CIVIL ACTION NO. 3:2005-305 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | JUDGE GIBSON |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

### FACTUAL AND PROCEDURAL BACKGROUND

Presently before the Court is a Petition for the Writ of Habeas Corpus which was remanded at the order of a panel of the Court of Appeals for the Third Circuit. This Court originally denied the Petition by the Order of Court dated November 7, 2005 (Document No. 14), which adopted the Report and Recommendation of Magistrate Judge Mitchell (Document No. 11) as the Opinion of this Court. The Petitioner, Dagoberto Vega (hereinafter "Vega") appealed and in an opinion dated July 11, 2007, the Court of Appeals affirmed in part and vacated and remanded in part.[1] The portion of this Court's opinion that was vacated concerns whether Vega is entitled to twenty-two months of credit for time served on a federal sentence of imprisonment for the period of April 17, 2002 through February 24, 2004 when he was at liberty.

---

[1] A judgment in lieu of formal mandate was issued by the Court of Appeals on August 10, 2007.

Vega was at liberty for twenty-two months after his release from the State of New York prison system and until he was taken into custody by officials of the federal government in order to commence a sentence of imprisonment which had been imposed upon him prior to his release by the State of New York. Vega claims that credit for time-served should be granted to him for this period in light of his actions in living a productive, law-abiding life in his community, while reporting to his New York state parole officer as required.

The present issue before the Court is the second directive made by the Court of Appeals on remand as contained in footnote six of its opinion: "It appears that if Vega's position is upheld on remand, he will have served or will be close to having served his sentence in full. Accordingly, on remand the District Court is instructed to forthwith and without delay hold a bail hearing on an expedited basis." *Vega v. United States*, 493 F.3d 310, 323 n. 6 (3d Cir. 2007). Complying with the Court of Appeals' directive and in consideration of the parties' professional and personal schedules, this Court held a bail hearing on September 10, 2007. The Court heard argument from both parties on the issue of bail, in particular, the correct standard with which to adjudge the granting of bail. After taking the issue of bail under advisement and directing the U.S. Marshal's Service to retain custody of Vega in this district pending a decision on this matter, this Court denied bail to Vega by the Order of Court dated September 20, 2007 (*see* Document No. 38), which stated that the analysis in support of the decision to deny bail would be set forth at a later date.

However, the Bureau of Prisons determined that Vega had satisfied his federal sentence and ordered his release from imprisonment on September 20, 2007, the same day he was denied bail by the Court. The Respondent filed a Notice of Suggestion of Mootness (Document No. 39) on September

2

21, 2007 in light of the petitioner's release from custody. Nevertheless, the issue as to any credit to be awarded for time-served has now transformed into an issue as to whether any credit for time-served can be applied to reduce his current term of supervised release. The Court ordered Vega to respond to the Respondent's notice either by agreeing with it and offering to dismiss his action or to proceed with his action and file a response in opposition to the Respondent's notice. *See* Document No. 40. Vega responded on October 15, 2007 indicating his belief that the instant matter is not moot and that he wishes to proceed with his petition. *See* Document No. 42.[2]

The Court now offers the following analysis in support of its previous order denying bail for Vega.

## ANALYSIS

### 1. The Possible Standards for Evaluating the Bail Decision

Initially, the appropriate standard for evaluating the granting of bail in this instance must be determined. Vega recognizes the case of *Landano v. Rafferty*, 970 F.2d 1230 (3d Cir. 1992) as the leading case in this Circuit regarding the standards for the grant of bail for petitioners seeking a Writ of Habeas Corpus. Among the three standards set forth in that opinion, Vega argues that in light of the procedural posture of the case *sub judice* (that is, a remand by Court of Appeals after its pronouncement of the new standard regarding credit for time spent at liberty and its suggestion of possible success of the Petition) that the standard set forth in Federal Rule of Appellate Procedure 23(c) is appropriate, rather than the standard set forth in *Landano* at page 1239, which is intended to apply to petitions

---

[2] Although Vega's response at Document Number 42 was untimely, Vega recognized its untimeliness and requested that the Court still accept his submission. The Court accepts Vega's untimely response filed at Document Number 42 and will consider it in future proceedings.

pending before the trial court that have not yet been ruled upon. Petitioner's Letter Brief (Document No. 30), p. 3. At oral argument, the Government disagreed with Vega and asserted that the latter standard set forth in *Landano* should be applied. The Court of Appeals gave no direction as to which standard is applicable to our decision on bail. *See Vega* at 323 n. 6.

*Landano* set forth three instances with differing standards for evaluating a bail request that apply to petitioners for the Writ of Habeas Corpus: 1) bail sought by a prisoner seeking review of his petition in the first instance in the district court, 2) "bail pending review by an appellate court of an order of the district court granting a writ of habeas corpus", and 3) bail pending appeal of the district court's order denying the Writ. *Landano* at 1238-1239. After considering the arguments of the parties and the circumstances of this remand, it appears that of the three instances discussed in *Landano* and their respective bail standards, only the first and second instances are argued to be applicable. Therefore, discussion of the third instance and its standard addressing a request for bail pending appeal of denial of the Writ is unnecessary.

For those petitioners seeking review of their petition in the first instance, *Landano* cites the Fifth Circuit case of *Calley v. Callaway*, 496 F.2d 701, 702 (5th Cir. 1974) which recognizes the appropriateness of bail "only when the petitioner has raised substantial constitutional claims upon which he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Landano* at 1239.[3] The

---

[3]*Landano* also recognized the Third Circuit's opinion in *United States v. Smith*, 835 F.2d 1048, 1050 (3d Cir. 1987), but it appears that the Third Circuit impliedly rejected any use of the standard in *Smith* as it proceeded to discuss the "extraordinary circumstances" prong set forth in *Calley*. *Landano* at 1239.

This Court also recognizes that the prisoners in *Smith* and *Calley* were federal prisoners while in *Landano*, the prisoner was a state prisoner. The Court finds no language from the opinions analyzed herein that requires differing bail

4

*Landano* Court then proceeded to explore the second prong of "extraordinary circumstances" but provided little discussion of the issue of whether the petitioner "raised substantial constitutional claims...." *Id.* The "extraordinary circumstances" recognized by courts appear to be "limited to situations involving poor health or impending completion of the prisoner's sentence." *Id.*

For petitioners seeking bail pending an appeal of an order granting the Writ, Federal Rule of Appellate Procedure 23 (c) is applicable. F.R.A.P. 23(c) provides:

> **Release Pending Review of Decisions Ordering Release.** While a decision ordering the release of a prisoner is under review, the prisoner must-unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise-be released on personal recognizance, with or without surety.

Vega argues for the application of this standard in this instance. Alternatively, Vega seeks application of the two prong standard of *Calley*.

As will be analyzed herein, the Court determines that *Calley's* two prong standard for bail for petitioners awaiting a decision on their petitions in the district courts is the applicable standard. The Court recognizes that this matter has been remanded and there is a possibility that Vega, who despite having since been released from custody, will be granted the Writ so as to permit a reduction in his term of supervised release. Therefore, the petition, to this extent, is still under review. Furthermore, the application of Federal Rule of Appellate Procedure 23(c) would be improper because there is no "decision ordering the release of a prisoner" and Federal Rule of Appellate Procedure 1 makes clear

---

standards for either type of prisoners who seek the Writ of Habeas Corpus.

5

that the such rules apply only to the United States courts of appeals.[4]

## 2.     The Power of the Courts to Grant Bail to a Petitioner for the Writ

Before applying the *Calley* standard, as recognized in *Landano*, it is noted that the power to grant bail to a prisoner seeking a Writ of Habeas Corpus is "[o]ne of the inherent powers of the judiciary". *Johnston v. Marsh*, 227 F.2d 528, 531 (3d Cir. 1955). Subsequently, in the *per curiam* opinion in *United States ex rel. Slough v. Yeager*, 449 F.2d 755 (3d Cir. 1971), the Third Circuit in footnote two cited *Johnston* in recognition of the authority of the district court to grant bail to a habeas corpus petitioner. After the rulings in *Johnston* and *Yeager*, the Third Circuit, in its opinion in *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986), addressed the applicable standard to be used by district courts in contemplating the issuance of bail to a habeas corpus petitioner:

> While *Johnston* and *Yeager* acknowledged the inherent power of a federal habeas tribunal to admit a state petitioner to bail pending a ruling on the claims asserted in the petition, they were not completely clear in announcing the standard under which a district court should evaluate a habeas petitioner's request for bail pending disposition of his petition. Other courts that have been faced with requests for bail prior to ruling on a habeas petition have developed standards requiring that a habeas petitioner (1) make out a clear case for habeas relief on the law and facts, or (2) establish that exceptional circumstances exist warranting special treatment, or both. *See, e.g., Eaton v. Holbrook,* 671 F.2d 670, 670 (1st Cir.1982); *Iuteri v. Nardoza,* 662 F.2d 159, 161 (2d Cir.1981); *Calley v. Callaway,* 496 F.2d 701, 702 (5th Cir.1974).
>
> We doubt that it is appropriate to grant bail prior to ruling on a state habeas petition solely on the ground that there is a high likelihood of success on the merits, especially absent exhaustion of state remedies. The Supreme Court has never suggested that the exhaustion requirement is to be enforced only against habeas petitioners who raise claims that appear unlikely to succeed. The narrower "extraordinary

---

[4]Federal Rule of Appellate Procedure 1(a) reads: **(a) Scope of Rules (1)** These rules govern procedure in the United States courts of appeals. **(2)** When these rules provide for filing a motion or other document in the district court, the procedure must comply with the practice of the district court.

6

> circumstances" test would seem a more suitable standard by which to determine when bail may be granted to a habeas petitioner prior to a ruling on the merits of the petition. Such a standard reflects the recognition that a preliminary grant of bail is an exceptional form of relief in a habeas corpus proceeding.
>
> Further, the results in *Johnston* and *Yeager* are consistent with the application of an "extraordinary circumstances" test. In *Johnston,* the petitioner was gravely ill and was granted bail on the condition that he enter a hospital to seek necessary medical care. And in *Yeager,* where no such circumstances were present, the grant of preliminary bail was reversed. Consequently, we conclude that, absent a showing of extraordinary circumstances, Lucas was improperly admitted to bail.
>
> While we do not mean to suggest that a habeas petitioner's poor health is the only "extraordinary circumstance" that may justify a grant of bail prior to disposition of the habeas petition, the district court in this case was presented with no exceptional circumstances warranting Lucas's release. Nor has Lucas persuaded this Court that exceptional circumstances justify granting him extraordinary relief.

*Lucas v. Hadden*, 790 F.2d 365, 367 (3d Cir. 1986).

Despite this discussion, the Third Circuit did not explicitly recognize whether the controlling standard includes both the "likelihood of success on the merits..." prong and the "extraordinary circumstances" prong, or solely the latter prong. Unfortunately, *Landano* does not provide the answer to this issue. The analysis in *Landano* focuses only upon the "extraordinary circumstances" evaluation set forth in *Calley* and does not address the applicability of the "likelihood of success on the merits" factor. *Landano* at 1239-1241.[5] However, the Third Circuit in *Landano* does present one insight into the nature of "extraordinary circumstances" in addition to that recognized in *Johnston*: "Very few cases

---

[5] As will be addressed herein, the Court agrees with the Government that the *Calley* standard set forth in *Landano* is the applicable standard and that Landano stated a claim "rais[ing] substantial constitutional claims upon which he ha[d] a high probability of success", but contrary to the Government's reading of *Landano*, the Court cannot agree that the Third Circuit explicitly adopted the two-part standard reflected in that case. At best, the Third Circuit implicitly sanctioned its use.

7

have presented extraordinary circumstances, and those that have seem to be limited to situations involving poor health or the impending completion of the prisoner's sentence." *Landano* at 1239.

*Landano* cites the case of *Boyer v. City of Orlando*, 402 F.2d 966 (5th Cir. 1968) as support for the conclusion that an impending completion of sentence is an "extraordinary circumstance" justifying bail. In *Boyer*, the Fifth Circuit granted bail to a convicted misdemeanant serving a 120 day sentence who filed a petition for the Writ arguing that the failure of Florida's courts to provide him with legal representation as an indigent violated his constitutional right to legal counsel. *Boyer* at 967. The *Boyer* court granted bail cognizant of the fact that by the time Boyer's state court appeal and federal habeas corpus claims were resolved, his sentence of a "$240 [fine] or 120 days in prison" imposed upon him for the misdemeanors of "disorderly conduct and interfering with and resisting a police officer" would inevitably expire. *Boyer* at 967-968. In the case *sub judice*, Vega, while still imprisoned, asserted that the impending completion of his sentence of imprisonment on September 11, 2008 constituted an "extraordinary circumstance".

## 3.     **The *Calley* standard**

Turning back to the issue of the proper standard, the Court must satisfy itself that it is applying the correct standard for reviewing a request for bail from the petitioner. After a review of the relevant case law, it is the Court's determination that it will, as a district court, apply both prongs of the standard set forth in *Calley v. Callaway*, 496 F.2d 701 (5th Cir. 1974).

*Calley* applied these two prongs in considering the appeal of a convicted serviceman for his role in the murders of Vietnamese civilians and an "assault with intent to murder" another such civilian.

8

*Calley* at 701. The *Calley* court cited to several authorities in support of its application of this two prong standard:

> Bail should be granted to a military prisoner pending postconviction habeas corpus review only when the petitioner has raised substantial constitutional claims upon which he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective. *See Aronson v. May*, 1964, 85 S.Ct. 3, 13 L.Ed.2d 6 (Douglas, J. on application for bail); *Glynn v. Donnelly*, 1 Cir., 1972, 470 F.2d 95; *Woodcock v. Donnelly*, 1 Cir., 1972, 470 F.2d 93; *Benson v. California*, 9 Cir., 1964, 328 F.2d 159, *cert. denied*, 380 U.S. 951, 85 S.Ct. 1086, 13 L.Ed.2d 970; *Boyer v. City of Orlando*, 5 Cir., 1968, 402 F.2d 966, 968; *Baker v. Sard*, 1969, 137 U.S.App.D.C. 139, 420 F.2d 1342.[1]

> [1] In *Aronson* Mr. Justice Douglas opined as follows:
>
> > 'Second: This applicant is incarcerated because he has been tried, convicted, and sentenced by a court of law. He now attacks his conviction in a collateral proceeding. It is obvious that a greater showing of special reasons for admission to bail pending review should be required in this kind of case than would be required in a case where applicant had sought to attack by writ of habeas corpus an incarceration not resulting from a judicial determination of guilt. *Cf. Yanish v. Barber*, 73 S.Ct. 1105, 97 L.Ed. 1637 (1953). In this kind of case it is therefore necessary to inquire whether, in addition to there being substantial questions presented by the appeal, there is some circumstance making this application exceptional and deserving of special treatment in the interests of justice. *See Benson v. California*, 328 F.2d 159 (CA 9th Cir. 1964). The papers before me on this application indicate the existence of no such circumstance.'
>
> > Some examples of extraordinary circumstances are serious deterioration of the petitioner's health while incarcerated, *United States ex rel. Ackerman v. Pennsylvania*, W.D.Pa.1955, 133 F.Supp. 627, *writ of mandamus denied*; *Johnston v. Marsh*, 3 Cir., 1955, 227 F.2d 528; *Woodcock v. Donnelly*, 1 Cir., 1972, 470 F.2d 93; short sentences for relatively minor crimes so near completion that extraordinary action is essential to make collateral review truly effective. *Noyd v. Bond*, 1965, 395 U.S. 683, 689, 89 S.Ct. 1876, 23 L.Ed.2d 631 (all but two days of one-year sentence served); *Levy v. Parker*, 1969, 396 U.S. 1204, 90

9

> S.Ct. 1, 24 L.Ed.2d 25, affirmed by full Court, 1969, 396 U.S. 804, 90 S.Ct. 47, 24 L.Ed.2d 60 (all but twelve days of three-year sentence served); *Boyer v. City of Orlando, supra* (one hundred twenty-day sentence); or possibly extraordinary delay in processing a habeas corpus petition, *Glynn v. Donnelly, supra.*

*Calley v. Callaway*, 496 F.2d 701, 702 (5th Cir. 1974). Of the authorities cited by the Fifth Circuit in *Calley*, only two explicitly refer to the fact that the underlying claims are to be "constitutional" in nature. Those are *Benson v. California*, 328 F.2d 159 (9th Cir. 1964) *cert. denied*, 380 U.S. 951, 85 S.Ct. 1086, 13 L.Ed.2d 970 (1965), and *Glynn v. Donnelly*, 470 F.2d 95 (1st Cir. 1972). The Court of Appeals for the Ninth Circuit in *Benson* wrote:

> It would not be appropriate for us at this stage of the proceeding to enlarge this petitioner on bail even if we found that the allegations of his petition for habeas corpus made out a clear case for his release. Something more than that is required before we would be justified in granting bail.[2]
>
> [2] There are thousands of prisoners confined in state prisons, any of whom, with a little assistance from their cell mates would have no difficulty in drafting a petition for writ of habeas corpus which would allege substantial violations of constitutional rights. We do not propose by ruling in this case, to open the door to the release of those thousands of prisoners on the basis of mere allegations in their petitions.

*Benson v. State of California*, 328 F.2d 159, 162-163 (9th Cir. 1964). Buttressing the prerequisite of a constitutional claim, the Court for Appeals for the First Circuit in the case of *Glynn v. Donnelly*, 470 F.2d 95, 99-100 (1st Cir. 1972) cited *Aronson* and *Benson* in its conclusion that a prosecutor's "ex parte communications with the trial judge" did not constitute a sufficiently substantial claim and were not alleged clearly enough to establish a basis for awarding bail to the petitioner. The First Circuit in *Glynn* set forth the applicable standard as follows:

10

> Quite apart from principles of comity, this combination of factors dictates a formidable barrier for those who seek interim release while they pursue their collateral remedies. *Cf. U. S. ex rel. Epton v. Nenna*, S.D.N.Y., 1968, 281 F.Supp. 388; *Baker v. Sard*, 1969, 137 U.S.App.D.C. 139, 420 F.2d 1342. We would express it in these terms. Both in the district court, and on appeal, in the absence of exceptional circumstances-whatever that may include-the court will not grant bail prior to the ultimate final decision unless petitioner presents not merely a clear case on the law, *Benson v. California, ante*, but a clear, and readily evident, case on the facts. Merely to find that there is a substantial question is far from enough.

*Glynn v. Donnelly*, 470 F.2d 95, 98 (1st Cir. 1972)(footnote omitted).

Further research reveals that the Court of Appeals for the Eighth Circuit has addressed the issue of bail for a habeas petitioner and has followed this same two part standard:

> Release on bail pending disposition of the habeas petition, or pending appeal, requires the habeas petitioner to show not only a substantial federal constitutional claim that "presents not merely a clear case on the law, but a clear, and readily evident, case on the facts," *Glynn v. Donnelly*, 470 F.2d 95, 98 (1st Cir.1972) (citation omitted), but also the existence of "some circumstance making [the request] exceptional and deserving of special treatment in the interests of justice." *Aronson v. May*, 85 S.Ct. at 5. *See e.g., Iuteri v. Nardoza*, 662 F.2d at 161; *Ostrer v. United States*, 584 F.2d 594, 599 (2d Cir.1978). Habeas petitioners are rarely granted release on bail pending disposition or pending appeal. *See Johnston v. Marsh*, 227 F.2d 528, 529 (3d Cir.1955) (medical emergency); *cf. Boyer v. City of Orlando*, 402 F.2d 966, 967-68 (5th Cir.1968) (extraordinary attempt to accommodate exhaustion of available state remedies with petitioner's clearly meritorious constitutional claim).

*Martin v. Solem*, 801 F.2d 324, 329 -330 (8th Cir. 1986). Finding no "substantial federal constitutional question" or "extraordinary circumstances", the Court of Appeals "reverse[d] the release order." *Martin* at 330. These established precedents that utilize this two part standard provided the basis for this Court's inquiry of each counsel's position on this issue in oral argument. This inquiry seemed necessary in light of these precedents, the discussion by the Third Circuit in *Hadden* that concentrated upon the "extraordinary circumstances" prong only, and the language used by the Court of Appeals in

11

footnote six of *Vega*. Applying the two part standard as announced in *Calley* and cited in *Landano*, this Court finds that Vega has not met either part of that standard.

In reviewing the first part of the standard, the presence of "substantial constitutional claims upon which he has a high probability of success," Vega fails to present claims of a constitutional nature. The Court of Appeals found that despite Vega's due process claim, he is without any constitutional basis in his efforts to obtain credit for time served after being erroneously granted liberty. *Vega* at 316-317. The Court of Appeals began its due process analysis with the following statement: "As a preliminary matter, we note that the interests upon which we base this test do not have constitutional stature." *Vega* at 316. The Court of Appeals concluded its due process analysis stating: "Because we do not find a constitutional basis upon which to anchor the rule of credit for time spent erroneously at liberty, the roots of the rule must be located elsewhere." *Vega* at 317. In the absence of such a constitutional claim, it begs the question as to why the Court of Appeals would direct a bail hearing be expeditiously held after already concluding that one of the necessary parts of the standard was not met. After a review of the context in which footnote six is placed within the *Vega* opinion, it appears that the Court of Appeals was already remanding the issue of Vega's credit for the twenty-two month period from April 17, 2002 through February 25, 2004 for determination by this Court, and thus, the bail issue was properly assigned to this Court in light of the remand. *Vega* at 323.

Finally, a review of the second part of the standard, "extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective", reveals that Vega fails to meet this criterion as well. At the time the Court denied bail, Vega was scheduled to be released from imprisonment in less than one year on September 11, 2008, whereas,

twenty-two months of possible credit for time served is in issue. However, when comparing this matter with the seminal case of *Boyer*, the difference in circumstances is clear. *Boyer* was serving a 120 day sentence as an alternative to his inability to pay the $240 fine and his constitutional challenge could not conceivably proceed through the court system prior to the completion of his sentence. Vega, even if successful in his claim, could not have been awarded a twenty-two month time-served credit to the remainder of his term of imprisonment, which was approximately twelve months. It is quite difficult in light of the limited precedent on this subject to find a definitive point between the time to be served and the time of imprisonment at issue that truly marks an "extraordinary circumstance". Once again, the Court observes that the amount of time at issue versus the amount of time that remained on Vega's term of imprisonment could have been recognized as an extraordinary circumstance by the Court of Appeals, but such recognition was not made. By comparison, Boyer's sentence clearly would have been completed prior to his achieving any possible success on his petition, thereby rendering the granting of the Writ moot. The Court reminds the parties that the awarding of bail from a pending term of imprisonment after a valid conviction is a rare remedy. In examining this issue, the Court finds instructive the words of *Calley* that bail is warranted "when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." In *Boyer*, the petitioner was afforded bail, otherwise the granting of the Writ after release from imprisonment would have been ineffective in that case.

In the case *sub judice*, the Court cannot find that an extraordinary circumstance exists in the fact that the time of the credit in issue is greater than the time that remained in Vega's term of imprisonment. Setting the threshold for extraordinary circumstances this low would permit its

13

requirements to be met in quite common circumstances, and thus convert the present rigorous standard into a relatively easy standard. Instead of being a rarely met requirement resulting in bail being granted only in extraordinary cases, the standard would become diluted to a point where bail could be achieved merely by *pro forma* allegations in a petition rather than by means of existent circumstances which are actually extraordinary.[6] However, Vega's circumstances at the time of his last day of imprisonment were distinguishable from *Boyer* in that the progress of his petition through the courts may have been able to be resolved prior to the expiration of the term of imprisonment. Such was Vega's situation at that time. Vega has now been released from imprisonment by the Bureau of Prisons and has begun serving a term of supervised release. Even with less than twelve months remaining on his sentence at the time of his release, the Court believes the Writ, if granted and if it had credited Vega with twenty-two months of time served, would still have been effective despite the fact that all twenty-two months could not be taken off of the remaining term of imprisonment. Thus, in terms of the extraordinary circumstance of impending completion of a sentence of imprisonment, the effectiveness of any order granting the Writ would appear to be best judged by its ability to release a prisoner from custody. An extraordinary circumstance does not exist solely due to the fact that the time remaining on a petitioner's term of imprisonment is a shorter period of time than the period of time at issue in the petition for the Writ. However, the remaining question in the case *sub judice* is, if a prisoner is released from custody, can a subsequent award of the Writ be effective or is the petition moot?

---

[6] Such a result would cause this Court to credit the "mere allegations" of any petition before it, something the Court of Appeals for the Ninth Circuit was not willing to do in *Benson*, and something this Court will not do either. *See Benson* at 162-163, n.2.

14

### 4. Conclusion

Unlike the petitioner in *Boyer*, Vega has an outstanding two year term of supervised release imposed under his federal criminal conviction. The fact that a period of supervised release remains unserved further supports the idea that the disparity between the time in issue and the time remaining to be served is not the only time period to be utilized. *See Benson* at 162 (citing *Jones v. Cunningham* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)) (recognizing that an outstanding term of probation that could be revoked was "enough control over the probationer so that his case does not become moot during the period of probation."); *see also United States v. Essig*, 10 F.3d 968, 970 n. 3 (3d Cir. 1993)(recognizing a term of supervised release is sufficient to establish the petitioner being a "prisoner in custody" for purposes of 28 U.S.C. § 2255). Vega's remaining term of approximately two years of supervised release, when taken into account with the twenty-two months in issue as compared to Vega's previously scheduled release date of September 11, 2008 strengthens the conclusion that an extraordinary circumstance has not been demonstrated in this case.

In conclusion, in determining whether "the petitioner has raised substantial constitutional claims upon which he has a high probability of success, and also [whether] extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective", *Calley* at 702, the Court finds that Vega has failed to meet both parts of the *Calley* test. Therefore, Vega's request for release on bond pending disposition of the remanded portion of his petition for a Writ of Habeas Corpus was denied by Order of Court dated September 20, 2007.

**AND NOW**, this 16th day of October, 2007, in support of the Order of Court dated September 20, 2007 (Document No. 38) denying the Petitioner bail, IT IS HEREBY ORDERED THAT the foregoing Memorandum Opinion is entered on the record as the analysis in support of the aforementioned Order.

                                               **BY THE COURT:**

                                               **KIM R. GIBSON,**
                                               **UNITED STATES DISTRICT JUDGE**